[L. A. No. 21062. In Bank. Oct. 31, 1950.]

Estate of EDITOR WILLIAMS, Deceased. SEBASTIAN WILLIAMS, Appellant, v. OCTAVIA WILLIAMS, Respondent.

Newton Van Why for Appellant.

Gavin Morse Craig and Vernon L. Ferguson for Respondent.

EDMONDS, J.—The probate court sustained objections by the wife of Editor Williams to the final account of the executor of his will and ordered distribution to her of certain realty and personalty as her share of the community property. The appeal of the executor presents for decision the question as to whether an interlocutory decree of divorce entered upon default effects an estoppel as to property rights upon a nonresident defendant.

More than 20 years ago, Editor and Octavia Williams were married in Mississippi. They lived together until 1929. In that year he shot her and fled from the state. Thereafter, Octavia never knew with any certainty of his whereabouts. From a friend, she heard that he was in Los Angeles, and until 1934 she communicated with him occasionally through his aunt.

Editor came to Los Angeles in 1934, and until her death cohabited with a woman who became known as Gertrude Williams. In 1944, they opened a joint bank account and deposited $1,200. When Gertrude died, the balance in the account was about $500. The evidence does not show the relative contributions of each of them to the account.

Early in 1945, Gertrude purchased real property for $4,750. An initial payment into escrow of $1,000 was made by check drawn upon their joint bank account; the balance was represented by a promissory note secured by a deed of trust for $3,750. Title was taken in Gertrude's name. Until her death, she and Editor lived together on the property as man and wife.

Whether Gertrude was aware of the subsisting marriage between Editor and Octavia does not appear in the record. During the time Editor and Gertrude resided upon the property, both of them were employed and installments totaling $750 were made upon the promissory note. The evidence does not show the source of these payments.

Gertrude died testate in 1945, leaving all of her property consisting of the improved realty and some personal property to Editor, whom she designated in her will as "my husband." The will was admitted to probate and the property distributed to him.

Editor then filed a divorce action in Los Angeles against

Octavia and the summons and complaint were served by publication. The complaint alleged that there was no community property belonging to the parties. The prayer asked only that the bonds of matrimony be dissolved, and the interlocutory decree entered in 1946 makes no provision respecting any property rights of the parties.

Editor died less than one year after the interlocutory decree was entered. His attorney, apparently uninformed as to his client's death, caused a final judgment of divorce to be entered in 1947. According to Octavia's uncontradicted testimony, she had no knowledge of the divorce action until after Editor's death.

Editor left a will devising all of his property to his brother, J. P. Williams. The estate consists of the real and personal property distributed from the estate of Gertrude, an automobile, bonds in the joint names of Gertrude and decedent, and $500 in cash, which evidently includes the balance in the joint bank account.

When the final account of the executor was presented, Octavia filed objections upon the ground that the property in the estate is the community property of herself and Editor and that, as his widow, she is entitled to one-half of it. The probate court ordered distribution to her of one-fourth of the entire estate. The executor has appealed from that part of the decree.

The executor contends that the probate court's determination is not supported by the evidence. There is no evidence, he says, showing that one-half of the purchase price of the real and personal property owned by Editor at the time of his death was paid with money earned or acquired by him, other than by gift, devise or inheritance, during the time he and Octavia were man and wife. It is further argued that Octavia is barred or estopped from challenging the allegation in Editor's complaint for divorce to the effect that there was no community property because her failure to deny it constituted an admission of its truth and a contract between them.

In support of the order of distribution, Octavia asserts: (1) The divorce decree did not determine the character of the property. The decree is not conclusive in this regard because the complaint asked for no determination of property rights. (2) A defendant who is served by publication without knowledge of the action is not estopped to assert a community interest in property. (3) The decree of the probate court is

supported by substantial evidence, in that during the entire time Gertrude and Editor lived upon the land as husband and wife, he was employed and earning money. This, with the testimony as to the joint bank account, supports an inference that he paid at least one-half of the consideration for the real and personal property acquired during the meretricious relationship.

Another ground relied upon by Octavia is that the realty and the automobile were held in Gertrude's name because to do otherwise would have exposed Editor to the risk of being located by his wife. She also argues that estoppel applies only to a defendant with actual knowledge of the pendency of litigation or to a plaintiff who makes community property an issue in the action.

Upon the evidence, the probate court was justified in determining that, as between Editor and Octavia, one-half of his estate is community property. She is, therefore, entitled to one-fourth of it unless she is estopped by the default judgment in the divorce action.

"It is true that an interlocutory decree in a divorce case is conclusive and res judicata with respect to all proper or necessary issues determined thereby. When so determined the interlocutory decree has been said to be in the nature of a contract between the parties, and upon the entry of the final decree the rights of the parties to community property becomes final and conclusive, subject only to attack on appeal or other statutory remedy." (*Green* v. *Green*, 66 Cal.App.2d 50, 61 [151 P.2d 679].) ■ Where subsequent litigation is based upon a different cause of action from that upon which the prior suit was based, "[T]he judgment is conclusive between the parties in such a case as to questions actually litigated and determined by the judgment. It is not conclusive as to questions which might have been but were not litigated in the original action. This is the doctrine of collateral estoppel." (Rest., Judgments, § 68, comment a, quoted with approval in *Green* v. *Green, supra*, and *Babcock* v. *Babcock*, 63 Cal.App.2d 94 [146 P.2d 279].)

Section 1911 of the Code of Civil Procedure provides: "That only is deemed to have been adjudged in a former judgment which appears on its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." ■ The parties to a divorce action may seek a determination of their property rights, but such an issue is not essential to the action. If it does not appear from the

decree that property rights were determined by it, they are not deemed to have been adjudicated and may be the subject of an independent action. (*Tarien* v. *Katz,* 216 Cal. 554 [15 P.2d 493, 85 A.L.R. 334]; *Green* v. *Green, supra; Callnon* v. *Callnon,* 7 Cal.App.2d 676 [46 P.2d 988].)

 The decree of divorce awarded Editor did not, therefore, necessarily include a determination of property rights and is no bar to the present action unless, from the face of the decree, it may be said that the issue of property was decided. The complaint alleged that there was no community property, but the prayer asked only that the bonds of matrimony be dissolved. The interlocutory decree recites that ". . . plaintiff is entitled to a judgment from defendant . . .," but neither it nor the final judgment makes any provision respecting property rights of the parties. Under such circumstances, it cannot be said that the court decided any issue other than the right to a divorce.

The fact that the judgment was secured by default does not warrant the application of a special rule. "A default judgment is an estoppel to all issues necessarily litigated therein and determined thereby exactly like any other judgment. . . ." (*Horton* v. *Horton,* 18 Cal.2d 579, 585 [116 P.2d 605]; *Strong* v. *Shatto,* 201 Cal. 555 [258 P. 71]; *Harvey* v. *Griffiths,* 133 Cal.App. 17, 22, 23 [23 P.2d 532]; 3 Freeman on Judgments, 5th ed., p. 2960, § 1296.) Of course, a court in a default action may not grant relief beyond that which is demanded in the complaint (Code Civ. Proc., § 580; *Burtnett* v. *King,* 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333]), but the present case does not involve that problem. The decree obtained by Editor is silent as to property rights and the parties do not attack its validity or scope nor challenge it as being either void or erroneous. It did no more than to declare that the bonds of matrimony should be dissolved, and the court's jurisdiction to that extent is unquestioned.

 Tested by the foregoing principles, it is clear that Octavia is not estopped to claim one-fourth of the estate of Editor by reason of the decree. However, it is argued that she is barred from making such claim because of her failure to deny the allegation in Editor's complaint for divorce to the effect that there was no community property.

The position taken by the executor is based upon statements made in deciding *Brown* v. *Brown,* 170 Cal. 1 [147 P. 1168]. Mrs. Brown's complaint alleged that there was no community

property and the prayer asked only that she be awarded a divorce. The husband did not answer and a default judgment was entered granting the wife a divorce but making no mention of property rights. Subsequently, the wife initiated an action to establish her title as a tenant in common to property which she alleged belonged to the community at the time of the divorce action. This court said: "Where a defendant is served with a summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint. The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him. The defendant here is presumed to have acceded to the proposition embraced in the complaint and to have consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint. The proceeding is equivalent to a statement by Brown to plaintiff that he did not object to a divorce for the cause alleged, based upon the theory that there was no community property existing at the time the action was begun. When judgment is rendered upon such a complaint and default, it becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief." (*Brown* v. *Brown, supra,* at p. 5.)

Despite the surface similarity between the Brown case and the present action, neither that decision nor the quoted language has any application to the facts now before this court. Mrs. Brown, the plaintiff, alleged that there was no community property. She was also the plaintiff in the subsequent action in which she claimed, in contradiction of her previous allegations, that there was such property. It was she, and not the defendant husband, who was held to be estopped. In the present case, Octavia was not the plaintiff and filed no pleadings in the divorce action. Her present contention that community property then existed is not inconsistent with any statement previously made by her, and the decision in *Brown* v. *Brown* is inapposite.

The statements of the opinion in the Brown case concerning admissions presumed to have been made by a defendant who permits a default to be taken against him are dicta. It was

the plaintiff wife and not the defendant husband who was held to be estopped to assert the existence of community property. But assuming the correctness of the rule stated, it has no application to the facts here shown. "The defendant, Brown, was duly served with summons and complaint and made default in the action, whereupon the court, upon evidence produced in support of the allegations of the complaint, made the interlocutory decree . . . [which] . . . recited that all the allegations of the complaint were sustained by the testimony and were true. . . ." (170 Cal. at p. 5.) And the court's statement of the rule of law includes the qualification: "Where a defendant is served with a summons and complaint. . . ." (170 Cal. at p. 5.)

Octavia Williams was not served with summons or complaint. She had no knowledge of the divorce proceedings until after Editor's death. Under such circumstances, there is no basis for presuming that she ". . . acceded to the proposition embraced in the complaint and . . . consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint." (170 Cal. at p. 5.) The default judgment entered without any actual knowledge on her part is not the equivalent of a statement by her to Editor that she ". . . did not object to a divorce for the cause alleged, based upon the theory that there was no community property existing at the time the action was begun." (170 Cal. at p. 5.) Where there is a complete lack of knowledge on the part of a defendant of the action, it would be unreasonable to hold that the judgment ". . . becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief." (170 Cal. at p. 5.)

The following cases have cited *Brown* v. *Brown, supra,* for the proposition that a default decree of divorce is res judicata as to the nonexistence of community property: *Tarien* v. *Katz,* 216 Cal. 554 [15 P.2d 493, 85 A.L.R. 334] ; *Paduveris* v. *Paris,* 213 Cal. 169, 172 [1 P.2d 986] ; *Metropolitan Life Ins. Co.* v. *Welch,* 202 Cal. 312 [260 P. 545] ; *Maxwell* v. *Maxwell,* 66 Cal.App.2d 549 [152 P.2d 530] ; *Lindley* v. *Hinch,* 57 Cal. App.2d 717 [135 P.2d 421] ; *Callnon* v. *Callnon,* 7 Cal.App.2d 676 [46 P.2d 988] ; *Stone* v. *Stone,* 58 Cal.App. 415 [208 P. 993]. However, the rule has never been applied to facts such as those shown in the present proceeding.

In *Tarien* v. *Katz, supra,* the complaint alleged and the court found that community property existed, ". . . but the amount, character and value thereof were not put in issue nor did the decree in anywise attempt to dispose thereof. Under such circumstances the parties became tenants in common of the community property." The situation there was distinguished from that shown in *Brown* v. *Brown, supra,* upon the ground that in the latter case ". . . the complaint alleged and the court found that there was no community property." (216 Cal. at p. 559.)

The Brown case was also held to be inapplicable in *Paduveris* v. *Paris, supra,* because ". . . an admission made by failure to answer is not the equivalent of an adjudication." Thus, where the complaint alleges certain property to belong to the community, the court's silence cannot ". . . be construed as an adjudication that the property was community." (213 Cal. at p. 172.)

In *Metropolitan Life Ins. Co.* v. *Welch, supra,* the complaint for divorce pleaded that certain specific property belonged to the community. The defendant defaulted and the court decreed to the plaintiff "all of the community property of plaintiff and defendant." Relying upon *Brown* v. *Brown, supra,* this court concluded that the divorce decree operated as an adjudication that there was no community property other than that specifically described in the complaint, but stated: "This rule, of course, would not be applicable when the final decree makes no disposition whatever of the community property. In such a case the former spouses become tenants in common in the community property and their rights thereto could be determined in a subsequent action." (202 Cal. at p. 318.)

The rule of the Brown case was applied in *Maxwell* v. *Maxwell, supra,* but it is important to note that plaintiff Maxwell, ". . . as defendant in the divorce proceedings, filed an admission of service of process, a consent to the jurisdiction, and a waiver of further service of process or notice." Further, the court found that "all the allegations of the complaint are true, and that they are sustained by testimony free from all legal exceptions. . . ."

In *Lindley* v. *Hinch, supra,* as in the Brown case, the party seeking to establish the existence of community property was the plaintiff in the prior divorce action who had there alleged the nonexistence of such property. She was held to be estopped.

In *Callnon* v. *Callnon, supra,* the Brown case was cited with approval but it had no application to the question then before the court.

The decree challenged in *Stone* v. *Stone, supra,* recited that the allegations of the complaint were true, and, although service was by publication, the defendant had actual knowledge of the allegations of the complaint and presumably of the terms of the interlocutory decree within a month after the decree was entered. The court applied the rule of the Brown case because the defendant had knowledge of the complaint and of the interlocutory decree ". . . eleven months prior to the entry of the final decree. He had full opportunity to seek relief from the judgment under the provisions of section 473 of the Code of Civil Procedure." (58 Cal.App. at p. 418.) For that reason, it was held, the defendant in the divorce action could not attack the judgment upon the basis of fraudulent allegations in the complaint.

The basis for the rule of the Brown case is clearly shown by the statement of it and this court's comments in *Paduveris* v. *Paris, supra.* "Where a defendant is served with a summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint." (*Brown* v. *Brown, supra,* at p. 5.) "The default of the defendant in the divorce action constituted an admission of the truth of plaintiff's allegation that the property was community." (*Paduveris* v. *Paris, supra,* at p. 172.) "Since a judgment is conclusive as to admitted or uncontested matters upon which it was founded, a judgment by default where personal jurisdiction of the defendant has been obtained is as conclusive either as an estoppel or bar as a judgment in a contested case." (2 Freeman on Judgments, p. 1393.)

To summarize the holdings of these cases, a defendant may be estopped by a default judgment entered upon a complaint for divorce alleging facts as to property rights when he has been personally served with summons or has actual knowledge of the existence of the litigation. But this rule has been applied only where the record shows an express finding upon the allegation as to property. Because none of those conditions is shown in the present case, Octavia is not estopped from asserting her claim to the estate of Editor. She was not served with summons or complaint, had no knowledge of the divorce proceeding until after the death of Editor, and there was no

finding that the allegations of his complaint regarding property were true.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I concur in the judgment. This decision apparently accepts and follows, *sub silentio*, the views expressed in the concurring opinion in *De Young* v. *De Young* (1946), 27 Cal.2d 521, 527 et seq. [165 P.2d 457].